IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

J&J CENTER LLC,                          §
                                         §
                    Plaintiff,           §
                                         §
vs.                                      §        CIVIL ACTION NO._____
                                         §
CERTAIN UNDERWRITERS AT                  §
LLOYD'S, LONDON,                         §
                                         §
                    Defendant            §
                                         §

## INDEX OF DOCUMENTS FILED IN STATE COURT

1.    Plaintiff's Original Petition with Interrogatories,
      Request for Disclosures, Requests for Admissions
      and Request for Production                          Filed January 7, 2020

2.    Letter submitting service Fees                       Filed January 9, 2020

3.    Defendants Certain Underwriters at Lloyd's of London
      Original Answer to Plaintiff's Original Petition     Filed February 6, 2020

4.    Citation (Certain Underwriters)                      Filed February 10, 2020

5.    Defendants' Motion for Substitution and Withdrawal
      of Counsel                                           Filed February 13, 2020

6.    Agreed Order Granting Motion for Substitution and
      Withdrawal of Counsel                                Filed February 14, 2020

7.    Signed Order Granting Motion for Substitution and    Entered February 18, 2020
      Withdrawal of Counsel

Exhibit D

1/7/2020 1:33 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 39738286
By: Joshua Carroll
Filed: 1/7/2020 1:33 PM

NO. _____

| | | |
|---|---|---|
| **J&J CENTER LLC, Plaintiff** | § | **IN THE DISTRICT COURT** |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CERTAIN UNDERWRITERS at** | § | |
| **LLOYD'S, LONDON, Defendant** | § | **_____ JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION WITH INTERROGATORIES, REQUESTS FOR DISCLOSURES, REQUESTS FOR ADMISSIONS AND REQUESTS FOR PRODUCTION

Plaintiff J & J Center LLC, hereinafter sometimes called "plaintiff" complains of and about

Certain Underwriters at Lloyd's, London Subscribing to Policy No. ISPNO100034, hereinafter

sometimes called defendant or CULL. For causes of action the plaintiff alleges the following:

1.0     **DISCOVERY LEVEL:** Discovery in this case is intended to be conducted under level 3

of rule 190 of the Texas Rules of Civil Procedure.

2.0 **PARTIES AND SERVICE:** Plaintiff is a Texas LLC located in Harris County, Texas.

2.1 Defendant is a syndication of individuals (comprised of one or more persons, corporations,

entities, or some combination of one or more persons, corporations or entities) whose names,

residences and principal places of business defendant has not disclosed to plaintiff. Accordingly,

upon information and belief, at the times material to the allegations in this petition, one or more

of the individuals comprising defendant either may have resided in Texas or maintained

his/her/its principal place of business in Texas. At all times material to this action, defendant

engaged in the business of insurance in the state of Texas, as more particularly described below,

and the causes of action asserted arise out of this defendant's business activities in Texas. By the

terms of the policy at issue which defendant issued to plaintiff, defendant has designated the

Texas Commissioner of Insurance as its agent for service of process, and Mendes and Mount,

LLP as its agent to accept such process from the Texas Commissioner of Insurance. Accordingly, defendant can be served with process by serving the Texas Commissioner of Insurance, Agent for Service of Process of Certain Underwriters at Lloyd's, London, at 333 Guadalupe, Austin, Texas 78701. The Commissioner will forward citation and the petition with discovery to defendant by and through Mendes and Mount, LLP, 750 7th Avenue, New York, New York 10019. **ISSUANCE OF CITATION TO THE DEFENDANT VIA THE TEXAS COMMISSIONER OF INSURANCE IS REQUESTED.**

3.0      **TRCP 47 CLAIM FOR RELIEF:** Monetary relief of over $1,000,000 is being sought.

4.0      **JURISDICTION AND VENUE:** The subject matter in controversy is within the jurisdictional limits of this court. Venue in Harris County is proper in this cause under Section 15.002(a) (1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the transaction giving rise to this lawsuit occurred in this county. Venue is also proper in Harris County, Texas, because the insured property is situated in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE §15.032.

5.0      **STATEMENT OF FACTS:** J&J Center LLC, the insured policyholder (PH) of the defendant, suffered damages during Hurricane Harvey in Houston Texas beginning on August 27, 2017 and as further identified below. The insured property in question is a commercial strip center located at 12700 Scarsdale, Houston, Texas 77089. Other information pertinent to the policy and claim made are:

| | |
|---|---|
| Insured: | J&J Center LLC |
| Policy No.: | ISPNO100034 |
| Certificate Period: | April 10, 2017 to April 10, 2018 |
| Claim No.: | 916798 |
| Insurer: | Certain Underwriters at Lloyd's London |
| Reported Date of Loss: | August 27, 2017 |
| Type of Loss: | Hurricane Harvey |

Unofficial Copy Office of Marily Burgess District Clerk

Loss Location:                  12700 – 12800 Scarsdale Blvd., Houston, TX 77089

The claim was assigned to Peninsula Insurance Bureau (PIB) as a third-party administrator for defendant. On **October 19, 2017** PIB acknowledged the above referenced claim via TPA Account Manager, James D. Wolf II. By **January 16, 2018** PIB denied the claim, asserting the following:

> The field adjuster, Craig Taylor of the Littleton Group, conducted his inspection on October 28, 2017, and he observed no evidence of storm damage or a physical opening in the roofing systems or exterior walls that contributed to the interior water damages. The rainwater intrusion was found to relate to insufficient drainage, wind driven rainwater, wear and tear and/or other maintenance conditions to the roofs. Mr. Taylor also observed previous wear & tear damage to the rolled roofing system of both commercial properties.
>
> This policy will not pay for loss or damage caused by or resulting from wear and tear, decay and deterioration. This policy will further not pay for loss or damage caused by or resulting from faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction, renovation, materials used in repair or construction and maintenance. This policy will also not pay for loss or damage to the interior of any building caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters. The policy specifically excludes neglect of the insured property. Also, the policy contains a duty of the insured to protect the property from further damage.

5.1      PIB cited various provisions of the policy language not applicable to the PH's claim. At no time did PIB ask for any information from the PH as was its right under §542.055 Texas Insurance Code (TIC). In other words, PIB, on behalf of CULL, was content to deny the claim based solely on Mr. Taylor's October 28, 2017 inspection and the report which resulted from same. No requests for the history of the property or photos from the PH or any other information were made to the PH. Mr. Taylor's inspection, two months after the loss, was all CULL ever sought.

5.2      Hurricane Harvey resulted in record breaking rainfall accumulation totals within the continental United States in excess of 50 inches (51.88 at nearby Cedar Bayou; 49.80 inches at nearby League City, see: https://www.weather.gov/hgx/hurricaneharvey). Facts which PIB & CULL never sought to investigate and thus ignored, are:

Page 3 of 25

1. The policy in question covers the insured properties for covered losses during the period 4/10/17 to 4/10/18;

2. The PH's principals, Tony and Jennifer Tran, have been located at the insured location for at least 27 years;

3. They have operated an Asian oriented market (My Quang Market) at 12790 Scarsdale at the insured location during that time;

4. The properties were previously owned by Ocires I Ltd. with My Quang Market having been a tenant there as far back as 1992;

5. On June 12, 2007 the PH, J&J, was formed so that the insured locations could be purchased and operated by J&J;

6. On June 29, 2007 the insured properties were transferred from Ocires I Ltd. to J&J;

7. Prior to the purchase by J&J, new roofs were placed onto the properties, meaning that the roofs were little more than 10 years old at the time of Harvey;

8. The principals of the PH are eyewitnesses to that fact (they saw the new roofs being installed everyday while operating My Quang Market on the premises);

9. For the ten plus years prior to August 27, 2017 the new roofs performed as designed from the point of view in the PH, both as landlord (J&J) and tenant (My Quang Market);

10. There were no roof leaks experienced by the PH or My Quang Market, nor were complaints of roof leaks made to the PH by any tenant before August 27, 2017;

11. The roofs in question are flat and are 12,763 square feet (12,700 Scarsdale) and 8,596 square feet (12,800 Scarsdale) respectively with a 254 square foot walkway roof in between the two larger roofs;

12. There is also a parapet along the length of 12,7000 Scarsdale for another 1596 square feet. (total square footage: 23,209)

13. There is a total of 132 "penetrations" to the roofs for items such as stacks, vents and compressors;

14. Weather data from NOAA[1] show virtually no rain at zip code 77089 (Pearland Station) from August 10th to August 25th (barely a quarter inch);

---

[1] National Oceanic & Atmospheric Administration

15. On Saturday evening, August 26th rain began to fall in Houston for 4 days;

16. At 77089 the totals were 8/26 2.42"; 8/27 17.48" 8/28 7.48"; 8/29 11.10" (38.48" total);

17. Houston's average annual rainfall is about 48";

18. In other words, in slightly more than 3 days the PH's zip code got more than 75% of a year's worth of rain;

19. The water came down from the roof, not from surface flooding;

20. In that regard, two flood claim investigations done for FEMA related to the insured property showed that flood water never reached the door levels of the property and that any flood water penetration was minor and limited to the doorway area;

21. A set of 78 photos taken as early as August 27, 2017 show water throughout the My Quang Market (the largest tenant on the property) along with fallen drop ceiling tiles and insultation;

22. The sustained historic rain fall accumulation combined with high wind gusts, created enough force (water weight & wind force) to result in sufficient separation to the roofs at multiple penetration points to result in water entering through the roof and into the interior resulting in the wind driven rain damage made the basis of the PH's claims;

23. Such a loss is covered under "Causes of Loss – Special Form" under the exception to the "collapse" exclusion (¶k);

24. The definition of "collapse" includes "loss of structural integrity, including separation of parts of the property", which, if that form of "collapse" occurs as a result of "weight of rain that collects on a roof", voids the exclusion resulting in coverage;

25. According to estimates from Symbiosis Design & Build, the cost to repair the insured property from the Harvey damages is as follows:
    a. 12700 Scarsdale Roof:      $170,493.75
    b. 12700 Scarsdale Interior:  $124,920.50
    **c.  12700 Scarsdale Subtotal $295,414.25**
    d. 12800 Scarsdale Roof:      $113,662.50
    e. 12800 Scarsdale Interior:   $83,460.75
    **f.  12800 Scarsdale Subtotal $197,123.25**
    g. **Total Cost to Repair: $492,537.50**

6.0    **CONDITIONS PRECEDENT:**    Plaintiff has complied with all conditions precedent

to recovery upon the Policy, and as to any claim or allegation that plaintiff has not complied with

any conditions precedent applicable under the law or the Policy, plaintiff is excused from any such compliance by the law and the conduct of the defendant.

**CAUSES OF ACTION:**

7.0      **BREACH OF CONTRACT:** Based on the facts alleged above, defendant has breached the insurance contract with plaintiff. Defendant issued the Policy to plaintiff and the Policy is an enforceable contract under the laws of Texas for the payment of plaintiff claims. Plaintiff at all times substantially performed its obligations under the Policy and continues to perform, including mitigation of further damage despite non-performance by defendant.

7.1      Defendant materially breached the Policy by failing to timely and properly adjust plaintiff's claim and by failing to pay plaintiff's claim timely and fully as provided by the terms of the Policy. The breaches by defendant of its Policy obligations to plaintiff in relation to its claim caused injury and damage, actual and consequential, to plaintiff.

8.0      **TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES:**      The conduct of defendant described above constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices made actionable for damages, attorney's fees and other relief under Tex. Ins. Code §§541.151 and 541.152.

8.1      The misrepresentations of material facts, including without limitation misrepresentations through conduct, lack of conduct and silence or omission by defendant relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §§541.060(a)(1) and 541.061(1)-(5).

8.2      The conduct of defendant in failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the

business of insurance. TEX. INS. CODE §§541.060(a)(2)(A) and541.061(1)-(5).

8.3    The conduct of defendant in failing to provide plaintiff with a prompt and reasonable

explanation of the basis in the Policy for its denial of an offer of a compromise settlement of the

claim constitutes an unfair method of competition and an unfair and deceptive act or practice in

the business of insurance. TEX. INS CODE §§541.060(a)(3) & 541.061(1)- (5).

8.4    The conduct of defendant in failing within a reasonable time to affirm or deny

coverage of the claim to plaintiff, or to submit a timely or proper reservation of rights to plaintiff,

constitutes an unfair method of competition and an unfair and deceptive act or practice in the

business of insurance. TEX. INS. CODE §§541.060(a)(4)(A)-(B) and 541.061(1)-(5).

8.5    The conduct of defendant in refusing to pay Plaintiff' claim without conducting a

reasonable investigation constitutes an unfair method of competition and an unfair and deceptive

act/practice in the business of insurance. TEX. INS. CODE §§541.060(a)(7) & 541.061(1)-(5).

8.6    As to each of the acts and omissions described above, together and singularly, defendant

acted "knowingly" as defined in the Texas Insurance Code and by Texas law and was a

producing cause of plaintiff's damages.

8.7    The nationwide coverage of Hurricane Harvey and its "Biblical" and record setting flooding

due to the record-breaking amount of rainfall was well known throughout the United States and to

PIB and the defendant. To claim that, among other things, there was "inadequate drainage" which led

to the loss, is preposterous. Remarking that the policy specifically excludes neglect of the insured

property and noting that it "will further not pay for loss or damage caused by or resulting from

faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction,

renovation, materials used in repair or construction and maintenance" for the relatively new 10

year plus roofs which functioned at all times before, reflects the defendant's knowing bad faith.

9.0    **NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS:**  Defendant's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims Act. All violations made under this article are actionable through TEX. INS. CODE §§542.060, 541.061(1)-(5), and 541.151-152.

9.1    Defendant failed to meet its obligations under the Texas Insurance Code regarding acknowledgement of plaintiff's claim, investigating plaintiff's claim and requesting all information reasonably necessary to investigate plaintiff's claim within the deadlines mandated under the Policy and the law, which constitutes violations of TEX. INS. CODE §§542.055 and 541.061(1)-(5).

9.2    Defendant failed to accept or deny plaintiff's full and entire claim within the deadlines mandated under the Policy and the law, which constitutes violations of TEX. INS. CODE §§542.056 and 541.061(1)-(5).

9.3    Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claim by delaying full payment of plaintiff's claim longer than allowed by law and under the Policy, even to date, which constitutes violations of TEX. INS. CODE §§542.058 and 541.061(1)-(5).

10.0    **BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING:** Defendant's conduct described above constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

10.1    The conduct of defendant in failing to attempt in good faith to effectuate a prompt,

fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes a breach of its duty of good faith and fair dealing to the plaintiff.

10.2    The conduct of defendant in refusing to pay plaintiff's claim without conducting a reasonable investigation, constitutes a breach of its duty of good faith and fair dealing to the plaintiff.

11.0    **VIOLATIONS OF DTPA:** The conduct of the defendant described above violates the Texas Deceptive Practices Act for which plaintiff sues. Specifically, defendant violated **Section 17.46(b), Business & Commerce Code** which states, in pertinent part:

### §17.46. Deceptive Trade Practices Unlawful.

**(a)** False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

**(b)** Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

**(5)** representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

**(7)** representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

**(12)** representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

**(24)** failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

11.1    The defendant's conduct described above also violates §17.45(5) DTPA, for an "unconscionable action or course of action", which under the DTPA means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

11.2    For violations of the DTPA the following applies:   **§541.152. Damages,**

**Attorney's Fees, and Other Relief:**

> **(a)** A plaintiff who prevails in an action under this subchapter may obtain:
>
> > **(1)** the amount of actual damages, plus court costs and reasonable and necessary attorney's fees;
> >
> > **(2)** an order enjoining the act or failure to act complained of; or
> >
> > **(3)** any other relief the court determines is proper.
>
> **(b)** Except as provided by Subsection (c), on a finding by the trier of fact that the defendant knowingly committed the act complained of, the trier of fact may award an amount not to exceed three times the amount of actual damages.

12.0    **ACTS CONSTITUTING ACTING AS AGENT:**    **PIB** at all times acted as the agent of defendant based on their acts during the handling of plaintiff's claim, including inspections, adjustments, and aiding in adjusting a loss for or on behalf of defendant TEX. INS. CODE §4001.051.

12.1    Separately, or in the alternative, defendant ratified the actionable conduct PIB to the detriment and damage of the plaintiff.

13.0.    **ATTORNEY'S FEES:** Defendant's wrongful conduct has made it necessary for plaintiff to employ the undersigned attorneys to file suit. The defendant is liable to the plaintiff for his attorneys' fees as authorized under §38.001 of the Texas Civil Practice & Remedies Code for breach of contract, the Texas Insurance Code and DTPA, cited above, for which plaintiff sues. As of plaintiff's 60-day notice letter July 26, 2019 the attorney's fees owed were 51.4 hours @ $250 = $12,850.

14.0    **DAMAGES**: For breach of contract plaintiff is entitled to all benefits under the Policy, as well as consequential damages, together with contractual interest imposed by Texas law and attorney's fees.

14.1     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, plaintiff is entitled to actual and other damages. These include the loss of the benefits owed under the Policy, mitigations expenses, expenses incurred in retaining experts to assess plaintiff's covered losses (made necessary by defendant's failure to perform in this regard as required by the Policy and the law), court costs and attorney's fees.

14.2     For knowing conduct of the acts described above plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

14.3     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, plaintiff is entitled to the amount of its claim, as well as ten (10) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

14.4     For breach of the common law duty of good faith and fair dealing, plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed and exemplary damages.

15.0     **JURY DEMAND:**  Plaintiff demands a jury trial and tenders the appropriate jury fee with this petition.

**PLAINTIFF'S DISCOVERY TO DEFENDANT:**

**All discovery requested is due 50 days after service of this lawsuit and discovery upon the defendant.**

**Definition: "Defendant" means the actual named defendant in this lawsuit as well as all Certain Underwriters at Lloyd's, London subscribing to insure commercial real property from property damage to commercial real property in the state of Texas from 2013 through Hurricane Harvey on or about August 26, 2017.**

**"Defendant" also means or includes Peninsula Insurance Bureau (PIB) as a third-party administrator for defendant and any aspect of PIB's handling of the plaintiff's claim(s).**

**REQUEST FOR DISCLOSURES**

Pursuant to Texas Rule of Civil Procedure 194 each defendant is requested to disclose the information or material described in Texas Rules of Civil Procedure Rule 194.2(a)-(l).

**REQUEST FOR ADMISSIONS**

Pursuant to Texas Rule of Civil Procedure 198, plaintiff requests that each defendant admit or deny the below.

**REQUESTS FOR ADMISSIONS TO EACH NAMED DEFENDANT ADMIT OR DENY THE FOLLOWING:**

1.0     J&J Center LLC, the insured policyholder (PH) of the defendant, suffered damages during Hurricane Harvey in Houston Texas beginning on August 27, 2017.

2.0     The insured property in question is a commercial strip center located at 12700 Scarsdale, Houston, Texas 77089.

3.0     Other information pertinent to the policy and claim made are:

| | |
|---|---|
| Insured: | J&J Center LLC |
| Policy No.: | ISPNO100034 |
| Certificate Period: | April 10, 2017 to April 10, 2018 |
| Claim No.: | 916798 |
| Insurer: | Certain Underwriters at Lloyd's London |
| Reported Date of Loss: | August 27, 2017 |
| Type of Loss: | Hurricane Harvey |
| Loss Location: | 12700 - 12800 Scarsdale Blvd., Houston, TX 77089 |

4.0     The claim was assigned to Peninsula Insurance Bureau (PIB) as a third-party administrator for defendant.

5.0     On **October 19, 2017** PIB acknowledged the above referenced claim via TPA Account Manager, James D. Wolf II.

6.0     By **January 16, 2018** PIB denied the claim, asserting the following:

The field adjuster, Craig Taylor of the Littleton Group, conducted his inspection on October 28, 2017, and he observed no evidence of storm damage or a physical opening in the roofing systems or exterior walls that contributed to the interior water damages. The rainwater intrusion was found to relate to insufficient drainage, wind driven rainwater, wear and tear and/or other maintenance conditions to the roofs. Mr. Taylor also observed previous wear & tear damage to the rolled roofing system of both commercial properties.

This policy will not pay for loss or damage caused by or resulting from wear and tear, decay and deterioration. This policy will further not pay for loss or damage caused by or

Page **12** of 25

resulting from faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction, renovation, materials used in repair or construction and maintenance. This policy will also not pay for loss or damage to the interior of any building caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters. The policy specifically excludes neglect of the insured property. Also, the policy contains a duty of the insured to protect the property from further damage.

7.0     At no time did PIB ask for any information from the PH as was its right under §542.055 Texas Insurance Code (TIC).

8.0     In other words, PIB, on behalf of defendant, was content to deny the claim based solely on Mr. Taylor's October 28, 2017 inspection and the report which resulted from same.

9.0     No requests for the history of the property or photos from the PH or any other information were made to the PH.

10.0    Mr. Taylor's inspection, two months after the loss, was all defendant ever sought.

11.0    Hurricane Harvey resulted in record breaking rainfall accumulation totals within the continental United States in excess of 50 inches (51.88 at nearby Cedar Bayou; 49.80 inches at nearby League City, see: https://www.weather.gov/hgx/hurricaneharvey).

12.0    The following subparts a - y are separate facts for which a separate admission is requested as to each subpart:

    a.  The policy in question covers the insured properties for covered losses during the period 4/10/17 to 4/10/18;

    b.  The PH's principals, Tony and Jennifer Tran, have been located at the insured location for at least 27 years;

    c.  They (the Trans) have operated an Asian oriented market (My Quang Market) at 12790 Scarsdale at the insured location during that time;

    d.  The properties were previously owned by Ocires I Ltd. with My Quang Market having been a tenant there as far back as 1992;

    e.  On June 12, 2007 the PH, J&J, was formed so that the insured locations could be purchased and operated by J&J;

    f.  On June 29, 2007 the insured properties were transferred from Ocires I Ltd. to J&J;

    g.  Prior to the transfer to J&J, new roofs were placed onto the properties, meaning that the roofs were little more than 10 years old at the time of Harvey;

h.  The principals of the PH are eyewitnesses to that fact (they saw the new roofs being installed everyday while operating My Quang Market on the premises);

i.  For the ten plus years prior to August 27, 2017 the new roofs performed as designed from the point of view in the PH, both as landlord (J&J) and tenant (My Quang Market);

j.  There were no roof leaks experienced by the PH or My Quang Market, nor were complaints of roof leaks made to the PH by any tenant before August 27, 2017;

k.  The roofs in question are flat and are 12,763 square feet (12,700 Scarsdale) and 8,596 square feet (12,800 Scarsdale) respectively with a 254 square foot walkway roof in between the two larger roofs;

l.  There is also a parapet along the length of 12,7000 Scarsdale for another 1596 square feet. (total square footage: 23,209);

m.  There is a total of 132 "penetrations" to the roofs for items such as stacks, vents and compressors;

n.  Weather data from NOAA[2] show virtually no rain at zip code 77089 (Pearland Station) from August 10th to August 25th (barely a quarter inch);

o.  On Saturday evening, August 26th rain began to fall in Houston for 4 days;

p.  At 77089 the totals were 8/26 2.42"; 8/27 17.48" 8/28 7.48"; 8/29 11.10" (38.48" total);

q.  Houston's average annual rainfall is about 48";

r.  In other words, in slightly more than 3 days the PH's zip code got more than 75% of a year's worth of rain;

s.  The water came down from the roof, not from surface flooding;

t.  In that regard, two flood claim investigations done for FEMA related to the insured property showed that flood water never reached the door levels of the property and that any flood water penetration was minor and limited to the doorway area;

u.  A set of 78 photos (provided to defendant via plaintiff's 60-day notice letter of July 26, 2019) taken as early as August 27, 2017 show water throughout the My Quang Market (the largest tenant on the property) along with fallen drop ceiling tiles and insultation;

v.  The sustained historic rain fall accumulation combined with high wind gusts, created enough force (water weight & wind force) to result in sufficient separation to the roofs at

---

[2] National Oceanic & Atmospheric Administration

multiple penetration points to result in water entering through the roof and into the interior resulting in the wind driven rain damage made the basis of the PH's claims;

w.   Such a loss (referred to in the preceding subpart) is covered under "Causes of Loss – Special Form" under the exception to the "collapse" exclusion (¶k);

x.   The definition of "collapse" includes "loss of structural integrity, including separation of parts of the property", which, if that form of "collapse" occurs as a result of "weight of rain that collects on a roof", voids the exclusion resulting in coverage;

y.   The reasonable and necessary cost to repair the insured property from the Hurricane Harvey damages is as follows:

 1.   12700 Scarsdale Roof: $170,493.75
 2.   12700 Scarsdale Interior: $124,920.50
 **3.   12700 Scarsdale Subtotal $295,414.25**
 4.   12800 Scarsdale Roof: $113,662.50
 5.   12800 Scarsdale Interior: $83,460.75
 **6.   12800 Scarsdale Subtotal $197,123.25**
 7.   **Total Cost to Repair: $492,537.50**

13.0   **CONDITIONS PRECEDENT:** Plaintiff has complied with all conditions precedent to recovery upon the Policy.

14.0   As to any claim or allegation that plaintiff has not complied with any conditions precedent applicable under the law or the Policy, plaintiff is excused from any such compliance by the law and the conduct of the defendant.

**REQUEST FOR PRODUCTION**

1.   A complete, certified copy of the insurance Policy(s) in effect on the date of plaintiff's claim(s).

2.   The entire claims investigation files generated and maintained by or for defendant in the ordinary course of business pertaining to plaintiff's claim(s) making the basis of this lawsuit.

3.   The entire claim file made by defendant or anyone acting for or on its behalf, including but not limited to all memos, reports, notes, emails, estimates, videos, and photos, related in any way to the claim made by plaintiff and made the subject of this suit.

4.      The entire claims investigation files generated and maintained by or for defendant in the ordinary course of business pertaining to plaintiff's insured property with a date of loss prior to Hurricane Harvey in August 2017.

5.      All documents pertaining to plaintiff's insured property which predate Hurricane Harvey in August 2017.

6.      All training and educational materials which instruct claims adjusters or claims handlers in handling claims for property damage coverage under homeowners' insurance policies in Texas given to any adjuster or person involved in handling this claim.

7.      All training and educational materials which instruct claims adjusters or claims handlers in handling claims for coverage of property under homeowners' insurance policies in Texas given to any adjuster or person involved in handling this claim.

8.      All procedure and policy manuals or guides meant to guide and assist claims adjusters or claims handlers in handling claims for property damages, including the criteria for and the process for evaluating whether coverage exists under homeowners' policies in Texas given to any adjuster or person involved in handling this claim.

9.      All procedure or policy manuals or guides meant to guide and assist claims adjusters or claims handlers in handling claims for property damage to the house, including the criteria for and the process for evaluating whether coverage exists under homeowners' insurance policies in Texas given to any adjuster or person involved in handling this claim.

10.     All communications and documents, including electronic, between defendant and plaintiff regarding plaintiff's claims(s).

11.     All communications and documents, including electronic, between defendant and any third-party regarding plaintiff's claim(s).

12.     All communications and documents, including electronic, between defendant and any other defendants(s) in this lawsuit regarding plaintiff's claim(s).

13.     All photographs, diagrams, drawings, or other graphic depictions of plaintiff and/or the insured property.

14.     Any and all documents, reports, estimate, data, emails, notes, photos, videos, manuals, guides, and summaries regarding the insurance claim(s) made the basis of this lawsuit, including but not limited to all estimates prepared by all claims adjusters of or hired by defendant regarding the insured property and all reports prepared by all engineers hired by defendant to inspect, test, or observe the insured property.

15.     All reports and other documents from governmental agencies or offices regarding plaintiff's insured property or containing officially kept information regarding plaintiff's insured property.

16.     All reports, analysis, and summaries referencing any laboratory testing conducted on samples taken from the insured property to investigate this claim on the insured property.

17.     Any and all claims files and claims reports, including but not limited to notes, emails, data, photos, videos, manuals, guides, summaries and claim documents, regarding all insurance claims made by plaintiff under its commercial insurance policies, specifically regarding damage to the exterior and interior of plaintiff's insured property. This request is limited to the 10 years before Hurricane Harvey.

18.     Any and all records and/or documents explaining criteria utilized to qualify vendors for any "approved vendor list".

19.     Any and all records and/or documents maintained by person(s) responsible for maintaining and updating any "approved vendors list."

20.     Any and all records and/or documents maintained by person(s) responsible for creating the criteria utilized to qualify vendors, including contractors and roofing companies, for any "approved vendors list."

21.     All documents including reports, estimates, data, emails, testing, sampling, videos and photographs received by defendant from any source regarding inspections of plaintiff's insured property.

22.     Any and all records defendant received, including those obtained by way of deposition by written questions, regarding plaintiff's insured property.

23.     Any and all records or documents defendant has reviewed and/or obtained regarding plaintiff's insured property.

24.     Any and all claims files defendant has reviewed and/or obtained regarding plaintiff's insured property.

25.     Any and all records or documents defendant has reviewed and/or obtained by third parties regarding plaintiff's insured property.

26.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, and/or avoiding charges of bad faith. This request is limited to the last five (5) years.

27.     All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner, or their agents, regarding practices in the handling of claims for insured property damage.

28.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling.

29.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §541.060 *et seq.* This request is specifically limited to the last five (5) years.

30.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §542.055 *et seq.* This request is specifically limited to the last five (5) years.

31.     Any and all reference materials, handouts, manuals, outlines, articles, and/or documents used or relied upon by defendant to conduct any seminars and/or continuing education classes for defendant's employees and/or adjusters, regarding the adjusting and/or handling of real property insurance claims and property damage claims in Texas. This request is limited to the last five (5) years.

32.  Any and all materials, documents, files and/or reports containing list(s) of contractors and engineering companies that have been approved and/or recommended for performance of services for defendant in Texas, specifically related to real property insurance claims. This request is limited to the last five (5) years.

33.  Any and all computer programs, electronic data, documents and/or manuals used by the adjusters and claims representatives to perform property damage estimates relating to real property insurance claims in Texas, including a complete copy of the computer program used to adjust plaintiff's claim(s). This request is limited to the last five (5) years.

34.  Any and all reference materials, handouts, manuals, outlines, articles and/or documents that have been distributed by and/or disbursed to defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas. This request is limited to the last five (5) years.

35.  Any and all materials, documents, files, invoices, and/or reports of any and all contractors and engineering companies retained to investigate, inspect, and/or evaluate plaintiff's claim(s) that are subject of this lawsuit, prepared on behalf of the defendant.

36.  True and correct copies of all activity logs relating to plaintiff's claim(s) for property damage, to their insured property, specifically the claim(s) made the basis of this lawsuit.

37.  Any and all documents reflecting company guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions defendants contends applied to plaintiff's claim(s).

38.  Any and all documents reflecting or relating to defendant's decisions to pay or deny additional expenses to or on behalf of plaintiff in this case.

39.  Any and all records reflecting payment to plaintiff concerning plaintiff's claim(s) made the basis of this suit.

40.  Any and all documents, including correspondence and checks, exchanged between defendant and any and all vendors concerning plaintiff's claim(s).

41. Any and all documents relating to or reflecting referrals of any vendors to plaintiffs or any insureds.

42. Any and all documents reflecting payment to any vendors for the cleaning and/or repair of plaintiff's insured property.

43. If you are withholding documents based upon an assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the privilege which defendant claims properly precludes the information from being discovered.

44. Any and all advanced or specialized certifications of personnel who inspected, investigated, and/or supervised the adjusting of the claim(s) pertaining to plaintiff's insured property.

45. Any and all documents, including contracts, rules, guidelines, and/or instructions exchanged between defendant, plaintiff and any other entities with whom defendant worked or communicated regarding plaintiff's insured property.

46. All physical and/or tangible items and/or potentially usable evidence obtained by or on behalf of defendant from the insured property.

47. Any and all indemnity agreements between defendant and any other defendant, person, entity, firm, or corporation against which a claim of indemnification might be brought because of the facts in this lawsuit.

48. Any and all complaint policies and procedures of defendant regarding the handling of complaints made by real property insureds. This request is limited to the last five (5) years.

49. Copies of all job descriptions of employees that adjusted or in any way supervised the handling of plaintiff's claim(s) regarding the insured property.

50. True and complete copies of all billing records from any and all adjusters and engineers regarding the claim(s) made the basis of this lawsuit including the time sheets or documentation used to justify the billing.

51.     Any and all reports, documents or correspondence reflecting the reserving and payment history of indemnity, expenses and vendors on this file including but not limited to dates, changes, and requests made by adjusters. This request is limited to the last five (5) years.

52.     Any and all reports, documents or correspondence reflecting the history of payment and reserves on this file.

53.     Any and all correspondence from defendant to and from vendors regarding any instructions, procedures, changes, training, payments and billing for property, property damage claims for 2014 through the present, including but not limited to computer disks, e-mails, paperwork and manuals.

54.     Any and all reports, documents, or correspondence containing lists of files with written complaints or TDI complaints on property damage claims previously gathered and produced in other TDI complaints or lawsuits. This request is limited to the last five (5) years.

55.     Studies commissioned by defendant including any done by a law firm to analyze their claim(s) management strategies and/or to help them improve corporate profits.

56.     Copies of the front and back of all checks paid on the insurance claim made the basis of this lawsuit.

57.     The entire underwriter's file for underwriting the insurance policy made the basis of this lawsuit.

58.     All notes, reports, documents, or applications created and/or generated by defendant's underwriting department related to the insurance policy made the basis of this lawsuit.

59.     **CRIMINAL RECORD**: Copies of any documents or records which show that any party to this suit or any person with knowledge of relevant facts identified by any party in this case has been arrested or convicted of any felony or misdemeanor involving moral turpitude and the outcome of such arrest.

60. **DEPOSITIONS**: Pursuant to Rule 203.3(c), it is requested that the original deposition transcript be made available for inspection and photocopying of any deposition (upon written questions or oral) in which this party or this party's attorney has been given custody. Providing a photocopy of any such originals shall be considered full compliance with this request.

61. **DOCUMENTS TO PLAINTIFF**: Any and all correspondence, emails, faxes, invoices, receipts, payments, consideration, letters, contracts, instructions, warnings, warranties, owner's manuals, reports, complaints or other documents provided by any person to plaintiff related to any insurance contract or agreement made the basis of this lawsuit.

62. **DOCUMENTS TO DEFENDANT**: Any and all correspondence, emails, faxes, invoices, receipts, payments, consideration, letters, contracts, instructions, warnings, warranties, owner's manuals, reports, complaints or other documents provided by any person (other than counsel for the defendant to his/her own client) to any defendant related to any insurance contract or agreement made the basis of this lawsuit.

**INTERROGATORIES TO DEFENDANT**

1: Identify by name, address and phone number each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

2: Identify every person who is expected to be called to testify at trial, including your experts.

3: Identify every person who has impeachment or rebuttal evidence and describe the evidence each person has.

4: If you contend you are not liable to the plaintiff for the amount of actual damages plead in the plaintiff's current live pleading, please state the factual basis for your contention.

5: Describe in detail any conversations you have had with plaintiff or plaintiff's representative with regard to any of the allegations made in the plaintiff's current pleadings, including in your response date, location and the substance of each such conversation and the identity of each person present at each conversation.

6:      If you contend that the plaintiff was ever in breach of the insurance policy agreement made the basis of this lawsuit, please describe the breach, when it occurred and state the factual basis for same.

7.      If you contend that any conditions precedent to plaintiff's recovery have not been met, whether said conditions be stated in the insurance policy or required by law, please state what conditions have not been met and describe the factual bases for such contention.

8.      List the date(s) defendant requested plaintiff to provide any named defendant in this lawsuit with requested information that defendant contends was required in order to properly evaluate plaintiff's claim(s).

9.      List the date(s) defendant received plaintiff's notice of claim(s) for coverage for property damage and the date(s) defendant first acknowledged plaintiff's notice of claim(s) and in what form the notice of claim was submitted.

10.     If you contend that plaintiff did not provide any named defendant in this lawsuit with requested information which you contend was required in order to properly evaluate plaintiff's claim(s), please state what information was requested and not provided and the dates of such alleged requests.

11.     State the name, address, telephone number, and job title or position of all persons who investigated, reviewed, handled, or made decisions regarding plaintiff's claim(s). For all such persons who are no longer employees, agents, or representatives of any defendant, please so indicate and provide the person's last known address and telephone number.

Page **23** of 25

12.     State the factual basis in the terms of plaintiff's policy, for defendant's denial and/or recommendation of denial of plaintiff's claim(s) under the policy.

13.     State the factual basis in the terms of plaintiff's policy, for defendant's failure to pay for plaintiff's full damage claim(s) under the policy.

14.     State the factual basis in the terms of plaintiff's policy, for the amount of money defendant has either paid or offered to pay, if any, for plaintiff's claim(s) under the policy.

15.     State the legal theories and describe the factual bases for any contention that defendant fully complied with each claim handling requirement codified in Tex. Ins. Code §541.060.

16.     State the legal theories and describe the factual bases for any contention that defendant fully complied with each claim handling requirements codified in Tex. Ins. Code §542.055.

17.     State the legal theories and describe the factual bases for any contention that defendant fully complied with each claim handling requirements codified in Tex. Ins. Code §542.056.

18.     State the legal theories and describe the factual bases for any contention that defendant fully complied with each claim handling requirements codified in Tex. Ins. Code §542.058.

19.     For each investigation by a Texas governmental agency within the last five (5) years into defendant's practices when handling first party claims for property damage coverage under insurance policies, state the name of the agency, the names of all investigators, and the names of all government representatives with whom defendant communicated for purposes of the investigation.

**ANSWER:**

**PRAYER: WHEREFORE, PREMISES CONSIDERED**, plaintiff prays that the defendant be cited to appear and answer herein, and that upon a final hearing of the cause that he be granted the following relief:

1.  Economic damages for each cause of action pled;

Page **24** of 25

2. Exemplary damages;

3. Treble damages for knowing violations as described above;

4. An award of reasonable and necessary attorney's fees;

5. Interest of 10% as allowed under the Texas Prompt Payment statute;

6. Costs of court;

7. Pre and post judgment interest at the highest lawful rates;

8. Any other relief, in equity or at law, to which the plaintiff may be entitled.

Respectfully submitted,

Peniche Law Firm PC
Carlos Peniche
State Bar No. 15748300
6200 Savoy Drive, Suite 1202
Houston, Texas 77036
Direct: 713-344-1206
carlos@penichelaw.com
***Attorney for Plaintiff***

Page **25** of **25**

1/9/2020 7:47 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 39801924
By: Chandra Lawson
Filed: 1/9/2020 7:47 AM

**Peniche Law Firm, P.C.**
**6200 Savoy, Suite 1202**
**Houston, Texas 77036**
**www.penichelaw.com**

**Carlos A. Peniche**                                                    Telephone (direct)
**Email: carlos@penichelaw.com**                                          (713) 344-1206
**Board Certified Personal Injury Trial Law**                                     Fax
**Board Certified Civil Trial Law**                                       (713) 655-1541
**Texas Board of Legal Specialization**

January 8, 2020

Clerk of Court
113th Judicial District Court
Harris County, Texas

Re:   Case: 202000878 - 7 Court: 113 J & J Center LLC v. Certain Underwriters at Lloyds London

Dear Sir/Madam:

I was advised that the fee for citation via the Texas Commissioner of Insurance is $12, not the $8 I paid. With this letter I am paying the extra $4. Please issue and e-serve me the citation.

Very truly yours,

Carlos A. Peniche

2/6/2020 1:53 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 40619496
By: SASHA PRINCE
Filed: 2/6/2020 1:53 PM

## CAUSE NO. 2020-00878

| | | |
|---|---|---|
| **J&J CENTER LLC** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CERTAIN UNDERWRITERS at** | § | |
| **LLOYD'S LONDON** | § | |
| *Defendant* | § | **113TH JUDICIAL DISTRICT** |

---

## DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON ORIGINAL ANSWER TO PLAINTIFF'S ORIGINAL PETITION

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Defendant CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON (hereinafter "Defendant"), and files its Original Answer to Plaintiff J&J CENTER, LLC (hereinafter, "Plaintiff")'s Original Petition and in support therefore, would respectfully show the Court as follows:

### I.

Defendant generally denies all allegations made by Plaintiff's Original Petition, pursuant to Tex. R. Civ. P. 92, and will demand strict proof thereof.

### II.

For further answer, if such be necessary, Defendant would show that Plaintiff's alleged damages were proximately caused by negligence on the part of the Plaintiff, specifically its failure to exercise ordinary care.

**III.**

For further answer, if such be necessary, Defendant would show that the acts, omissions and/or negligence of a third-party or parties over whom it exercised no control were the sole proximate cause of Plaintiff's alleged damages.

**IV.**

For further answer, if such be necessary, Defendant reserves the right to show that the damages alleged by Plaintiff were caused in whole or in part by pre-existing, intervening, and/or superseding and/or new and independent causes over which Defendant had no control.

**V.**

For further answer, if such be necessary, Defendant would show that it has substantially performed any and all obligations under any contract and/or agreement forming the basis of this suit.

**VI.**

For further answer, if such be necessary, Defendant would show that Plaintiff has failed to mitigate its damages in this case.

**VII.**

For further answer, if such be necessary, Defendant reserves the right to elect a credit attributable to any and all settlements reached in this litigation, including but not limited to any prior settlements with any other party to this litigation related to the claims made by Plaintiff related to the incident made the basis of this suit.

**VIII.**

For further answer, if such be necessary, Defendant hereby reserves the right to submit the negligence of any and all settling parties, as defined by Chapter 33 of the Texas Civil Practice & Remedies Code and interpreted by Texas courts.

**IX.**

Defendant reserves the right to amend its answer following further discovery in this cause and as allowed by Texas law.

**XI.**

Defendant hereby formally requests trial by jury of this cause.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that judgment be rendered; that Plaintiff takes nothing on all claims asserted against Defendant; that Defendant be awarded all costs and expenses incurred herein; and for such other and further relief, both legal and equitable, to which Defendant may be justly entitled.

Respectfully submitted,

**LOPEZ LAW GROUP, PLLC**

[*Signature on following page*]

By: _____

    BRIAN C. LOPEZ
    State Bar No. 24029693
    brian@lopezlit.com
    BLAIN DONNELL
    State Bar No. 24095387
    blain@lopezlit.com
    1502 Augusta Dr., Ste 450
    Houston, Texas 77057
    Phone: (713) 275-9707
    Fax: (713) 275-9722

**ATTORNEY FOR DEFENDANT
CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON**

Unofficial Copy Office of Marilyn Burgess District Clerk

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of February, 2020, a copy of the foregoing instrument has this day been electronically served, pursuant to the Texas Rules of Civil Procedure, upon the following counsel of record:

PENICHE LAW FIRM PC
Carlos Peniche
State Bar No. 15748300
6200 Savoy Drive, Suite 1202
Houston, Texas 77036
713-344-1206 Telephone
carlos@penichelaw.com
*Attorney for Plaintiff*

_____
BRIAN C. LOPEZ

2/8/2020 6:40 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 40677552
By: Devanshi Patel
Filed: 2/10/2020 12:00 AM
Court Stamp 2

# RETURN OF SERVICE

Notice: This document contains sensitive data

| Court | | |
|---|---|---|
| **District Court**<br>**113th Judicial District**<br>**Harris County, Texas** | | |

| Plaintiff | Cause # |
|---|---|
| **J & J CENTER LLC** | **202000878** |

| Defendant(s) | Came to Hand Date/Time |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYDS LONDON** | **1/16/2020      8:01 AM** |

| Manner of Service | Service Date/Time |
|---|---|
| **Personal** | **1/21/2020      2:20 PM** |

| Documents | Service Fee: |
|---|---|
| **CITATION; PLAINTIFF'S ORIGINAL PETITION WITH INTERROGATORIES, REQUESTS FOR DISCLOSURES, REQUESTS FOR ADMISSIONS AND REQUESTS FOR PRODUCTION** | **$70.00** |

I am certified under order of the Judicial Branch Certification Commission to serve process, including citations in Texas. I am not a party to or interested in the outcome of this lawsuit. My information: identification number, birth date, address, and certification expiration date appear below. I received and delivered the Specified Documents to Defendant as stated herein.

On **1/21/2020** at **2:20 PM**: I served **CITATION, PLAINTIFF'S ORIGINAL PETITION WITH INTERROGATORIES, REQUESTS FOR DISCLOSURES and REQUESTS FOR ADMISSIONS AND REQUESTS FOR PRODUCTION** upon **CERTAIN UNDERWRITERS AT LLOYDS LONDON c/o TEXAS COMMISSIONER OF INSURANCE, REGISTERED AGENT** by delivering **1** true and correct copy(ies) thereof, with **CERTAIN UNDERWRITERS AT LLOYDS LONDON c/o TEXAS COMMISSIONER OF INSURANCE, REGISTERED AGENT, James Kelly, Who accepted service, with identity confirmed by subject stating their name, a red-headed white male approx. 45-55 years of age, 5'8"-5'10" tall and weighing 160-180 lbs with a beard** at 333 GUADALUPE, AUSTIN, TX 78701.

My name is: **Paul B Logan**. My date of birth is: **3/10/1965**

My address is: **PO BOX 27585, Austin, TX 78755**, USA.

My process server identification # is: **PSC-9196**. My Certification expires: **9/30/2021**.

I declare under penalty of perjury that the foregoing, **RETURN OF SERVICE**, is true and correct.

Executed in <u>Travis</u> county, TX.

_____
Paul B Logan

<u>01/21/2020</u>
Date Executed

Ref  **J&J Center v Certain Underwriters**
0048570192





**Peniche Law Firm**

Tracking # 0048871373

2/13/2020 2:30 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 40822379
By: Devanshi Patel
Filed: 2/13/2020 2:30 PM

CAUSE NO. 2020-00878

| | | |
|---|---|---|
| J&J CENTER LLC, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | 113TH JUDICIAL DISTRICT |
| | § | |
| CERTAIN  UNDERWRITERS  AT | § | |
| LLOYD'S, LONDON | § | |
| | § | HARRIS COUNTY, TEXAS |
| DEFENDANT | | |

**AGREED ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUBSTITUTION AND WITHDRAWAL OF COUNSEL**

On this day, came on to be considered Defendants Those Certain Underwriters at Lloyd's, London subscribing severally to Certificate No. ISPNO100034's ("Defendants") Motion for Substitution and Withdrawal of Counsel. The Court is of the opinion and finds the that the Motion is meritorious and, therefore, should be granted.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Substitution and Withdrawal of Counsel is Granted.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Brian C. Lopez and Blain Donnell and the law firm of Lopez Law Group, PLLC are hereby allowed to withdraw as counsel for Defendant and Jerrod L. Rinehart and Elaine S. Morris and the law firm of Brackett & Ellis, P.C. are hereby substituted in as counsel for Defendant.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all relief not expressly granted is hereby denied.

SIGNED this _____ day of _____, 2020.

_____
JUDGE PRESIDING

1030309-v1/9998-004145

**AGREED AS TO FORM AND CONTENT:**

*/s/ Jerrod L. Rinehart*
Jerrod L. Rinehart
State Bar No. 24060494
jrinehart@belaw.com
Elaine S. Morris
State Bar No. 00784901
emorris@belaw.com
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102
Telephone: 817.338.1700
Facsimile: 817.870.2265

**ATTORNEY FOR DEFENDANT**
**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**

*/s/  Carlos Peniche  with permission*
Carlos Peniche
Peniche Law Firm PC
State Bar No. 15748300
6200 Savoy Drive, Suite 1202
Houston, Texas 77036
carlos@penichelaw.com

**ATTORNEYS FOR PLAINTIFF**

2/13/2020 2:28 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 40822097
By: Devanshi Patel
Filed: 2/13/2020 2:28 PM

CAUSE NO. 2020-00878

| | | |
|---|---|---|
| J&J CENTER LLC, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | 113TH JUDICIAL DISTRICT |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | § | |
| | § | |
| | § | HARRIS COUNTY, TEXAS |
| DEFENDANT | | |

**DEFENDANTS' MOTION FOR SUBSTITUTION
AND WITHDRAWAL OF COUNSEL**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Those Certain Underwriters at Lloyd's, London subscribing severally to Certificate No. ISPNO100034, "Defendants" in the above-entitled and numbered cause, and files this, their Motion for Substitution and Withdrawal of Counsel and in connection therewith would respectfully show the Court as follows:

1.

Defendants desire to substitute attorneys Jerrod L. Rinehart, State Bar No: 24060494 and Elaine Morris, State Bar No. 00784901 of the law firm of Brackett & Ellis, P.C., 100 Main Street, Fort Worth, Texas 76102, telephone 817.338.1700; facsimile 817.870.2265; email jrinehart@belaw.com and emorris@belaw.com as counsel of record in this case in place of attorney Brian C. Lopez, State Bar No. 24029693, and Blain Donnell, State Bar No. 24095387, 1502 Augusta Drive, Suite 450, Houston, Texas 77057; brian@lopezlit.com and blain@lopezlit.com, and that Brian C. Lopez and Blain Donnell be allowed to withdraw.

2.

The foregoing substitution and withdrawal is based on good cause and is not sought for delay only.

---

3.

Jerrod L. Rinehart will be lead counsel on this matter.

WHEREFORE, PREMISES CONSIDERED, Defendants Those Certain Underwriters at Lloyd's, London subscribing severally to Certificate No. ISPNO100034 pray that this Motion for Substitution and Withdrawal of Counsel be granted, and for such other relief to which Defendant may show itself to be justly entitled.

Respectfully submitted,

/s/ Jerrod L. Rinehart
Jerrod L. Rinehart
State Bar No. 24060494
Elaine S. Morris
State Bar No. 00784901

BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
817.338.1700
817.870.2265 - facsimile
jrinehart@belaw.com

ATTORNEYS FOR DEFENDANTS THOE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING SEVERALLY TO CERTIFICATE NO. ISPNO100034

/s/  Brian C. Lopez with permission
Brian C. Lopez
Blain Donnell
1502 August Drive, Suite 450
Houston, Texas 77057
brian@lopezlit.com
blain@lopez.lit.com



## CERTIFICATE OF CONFERENCE

I hereby certify that on February 12, 2020 I emailed counsel for Plaintiff, Carlos Peniche, regarding the merits of this motion. Plaintiff's counsel does not oppose and agrees to the relief requested therein.



*/s/ Jerrod L. Rinehart*
Jerrod L. Rinehart

## CERTIFICATE OF SERVICE

I hereby certify that on the February 13, 2020, a true and correct copy of the foregoing document was sent to all parties and counsel of record, pursuant to the Texas Rules of Civil Procedure.

Carlos Peniche
Peniche Law Firm PC
6200 Savoy Drive
Suite 1202
Houston, Texas 77036
carlos@penichelaw.com

*/s/ Jerrod L. Rinehart*
Jerrod L. Rinehart

2/13/2020 2:30 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 40822379
By: Devanshi Patel
Filed: 2/13/2020 2:30 PM

CAUSE NO. 2020-00878

| | | |
|---|---|---|
| J&J CENTER LLC, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | 113TH JUDICIAL DISTRICT |
| | § | |
| CERTAIN    UNDERWRITERS    AT | § | |
| LLOYD'S, LONDON | § | |
| | § | HARRIS COUNTY, TEXAS |
| DEFENDANT | | |

**AGREED ORDER GRANTING DEFENDANT'S MOTION
FOR SUBSTITUTION AND WITHDRAWAL OF COUNSEL**

On this day, came on to be considered Defendants Those Certain Underwriters at Lloyd's, London subscribing severally to Certificate No. ISPNO100034's ("Defendants") Motion for Substitution and Withdrawal of Counsel. The Court is of the opinion and finds the that the Motion is meritorious and, therefore, should be granted.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Substitution and Withdrawal of Counsel is Granted.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Brian C. Lopez and Blain Donnell and the law firm of Lopez Law Group, PLLC are hereby allowed to withdraw as counsel for Defendant and Jerrod L. Rinehart and Elaine S. Morris and the law firm of Brackett & Ellis, P.C. are hereby substituted in as counsel for Defendant.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all relief not expressly granted is hereby denied.

SIGNED this _____ day of _____, 2020.

Signed:
2/14/2020                        *Rebeca Suton Collier*

_____
JUDGE PRESIDING

1030309-v1/9998-004145

**AGREED AS TO FORM AND CONTENT:**

*/s/ Jerrod L. Rinehart*
Jerrod L. Rinehart
State Bar No. 24060494
jrinehart@belaw.com
Elaine S. Morris
State Bar No. 00784901
emorris@belaw.com
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102
Telephone: 817.338.1700
Facsimile: 817.870.2265

**ATTORNEY FOR DEFENDANT**
**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**

*/s/ Carlos Peniche  with permission*
Carlos Peniche
Peniche Law Firm PC
State Bar No. 15748300
6200 Savoy Drive, Suite 1202
Houston, Texas 77036
carlos@penichelaw.com

**ATTORNEYS FOR PLAINTIFF**